# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDRAY CASTRO AGUIAR,<br>Petitioner,<br>v.<br>U.S. ATTORNEY GENERAL, et al.,<br>Respondents. | Case No. 1:26-cv-05325-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS, DENY RESPONDENTS' MOTION TO DISMISS, AND IMMEDIATELY RELEASE PETITIONER<br><br>(ECF Nos. 1, 5) |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Cuba who entered the United States on or about August 3, 1980. (ECF No. 10-1 at 2.[1]) On January 15, 1991, an immigration judge ordered Petitioner removed from the United States. (ECF No. 10-2.) On or about December 28, 1993, Petitioner was convicted of assault on a police officer and possession of a firearm by a felon and sentenced to an imprisonment term of four years. (ECF No. 10-1 at 2; ECF No. 10-6 at 11.) Petitioner has had numerous other encounters with law enforcement, some of which have led to convictions. (ECF No. 10 at 2; ECF No. 10-6.) In December 2025, Petitioner came to the attention of U.S. Immigration and Customs Enforcement ("ICE") because he was in the Martin Correctional Institution. ICE lodged a detainer. (ECF No. 10-1 at 2.)

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

Petitioner was last released on an order of supervision ("OSUP") in 2007. (ECF No. 10-3.) On January 11, 2026, ICE provided notice that it was revoking Petitioner's OSUP because "[i]t is appropriate to enforce your removal order, which became administratively final on 1/15/1991[.]" (ECF No. 10-4 at 1.) On January 13, 2026, Petitioner was provided with an informal interview. (ECF No. 10-4 at 4.) Petitioner has been in ICE custody since approximately January 13, 2026. (ECF No. 10 at 2.) Petitioner has been informed on numerous occasions that ICE seeks to remove him to Mexico. (ECF No. 10-4 at 3; ECF No. 10-5.)

On April 8, 2026, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Florida, while detained at the North Florida Detention Center. (ECF No. 5 at 1; ECF No. 5-1.) On July 10, 2026, Petitioner filed a petition for writ of habeas corpus in this Court. (ECF No. 1.) On August 3, 2026, Respondents filed a motion to dismiss, and Petitioner filed a traverse on August 13, 2026. (ECF Nos. 5, 6.) On October 15, 2026, Respondents filed a supplemental brief. (ECF No. 10.)

## II.

## DISCUSSION

### A. Motion to Dismiss

Respondents have moved to dismiss the petition based on the first-to-file rule in light of Petitioner's previously filed petition in the United States District Court for the Middle District of Florida. (ECF No. 5.) Petitioner has filed a notice that the United States District Court for the Middle District of Florida granted his motion to voluntarily dismiss his earlier-filed petition. (ECF No. 7.) Accordingly, the Court recommends finding that dismissal is not warranted on this ground.

### B. Zadvydas

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Avilez, 69 F.4th at 530–31. "After entry of a final removal order and during the 90–day removal period . . . aliens must be held in custody." Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (citing 8 U.S.C. § 1231(a)(2)).

> A special statute authorizes further detention if the Government fails to remove the alien during those 90 days. It says:
>
> > "An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ...."

Zadvydas, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V)).

In Zadvydas v. Davis, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under § 1231(a)(6). Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable "6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. "This 6–month presumption, of course, does not mean that every alien

not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Respondents argue that "under *Zadvydas,* Petitioner bears the burden of demonstrating that his removal is not significantly likely in the reasonably foreseeable future." (ECF No. 10 at 3.) "However, the burden-shifting framework from *Zadvydas* does not apply here" because "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*" but rather "ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025) (alterations in original) (internal quotation marks omitted) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)). "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

**C. Likelihood of Removal**

"The regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in petitioner's situation and outline the process to be followed." Yan-Ling X., 813 F. Supp. 3d at 1163 (citing Nguyen, 788 F. Supp. 3d at 149; Escalante, 2025 WL 2206113, at *3). "A non-citizen subject to a final order of removal who is released on OSUP may be re-detained 'if, on account of changed circumstances, the Service determines [ ] there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" Huang v. Albarran, 818 F. Supp. 3d 1154, 1162 (E.D. Cal. 2026) (alteration in original) (quoting 8 C.F.R. § 241.13(i)(2)). "On numerous occasions, this Court has found that under 8 C.F.R. § 241.13(i)(2), when ICE revokes the release of a noncitizen who has been ordered removed to effectuate their removal, it is ICE's burden to show a significant likelihood of removal." Id. at 1160–61. "The phrase 'significant likelihood' requires something more than a mere possibility that removal will occur. Evidence that 'there is at least some possibility that' the designated country of removal 'will

accept Petitioner at some point ... is not the same as a significant likelihood that [he] will be accepted in the reasonably foreseeable future.'" Yan-Ling X., 813 F. Supp. 3d at 1164 (quoting Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025)).

Petitioner asserts that there is no significant likelihood that he will be removed to Cuba in the reasonably foreseeable future. (ECF No. 1 at 6.) Respondents argue that "Petitioner may have been removed from the United States and free from immigration detention, but for his lack of cooperation with removal efforts. He holds the keys to release from immigration detention in his hands through deportation." (ECF No. 10 at 2.) "As this Court and other judges in this District have pointed out, though DHS may have an informal arrangement with the Mexican government to allow third country removals to Mexico, Mexico only accepts individuals who consent to be removed there." Pedro V.L. v. Warden, No. 1:26-CV-05261-JLT-EGC (HC), 2026 WL 2607611, at *1 (E.D. Cal. Sept. 3, 2026) (emphasis in original). Therefore, "removal based on the standing agreement between the United States and Mexico is not reasonably foreseeable when the noncitizen does not consent to the removal." Ramirez Outerino v. Warden, Mesa Verde ICE Processing Ctr., No. 1:26-CV-05326-DJC-JDP, 2026 WL 2327873, at *2 n.1 (E.D. Cal. Aug. 11, 2026). Here, Petitioner has refused consent to removal to Mexico multiple times. (ECF No. 10-4 at 3; ECF No. 10-5.) Accordingly, Respondents have failed to satisfy their burden that changed circumstances have made Petitioner's removal significantly likely in the reasonably foreseeable future.

> The record is devoid of any evidence suggesting Mexico will accept Petitioner in the absence of his consent, and Petitioner's repeated refusal to cooperate with his removal to Mexico evidences his non-consent. Therefore, even assuming the traditional burden shifting framework from *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001), applies, the facts here satisfy Petitioner's burden to show there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and Respondents fail to rebut that showing.

Pedro V.L., 2026 WL 2607611, at *1.

Based on the foregoing, the Court recommends finding that Petitioner is entitled to habeas relief and immediate release. See Pedro V.L., 2026 WL 2607611, at *1 ("Though the Court has concerns about Petitioner's criminal history, under these circumstances, binding Ninth Circuit authority directs that Petitioner be released subject to appropriate conditions.").

**III.**

**RECOMMENDATION**

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED;
2. Respondents' motion to dismiss (ECF No. 5) be DENIED;
3. Petitioner be immediately released under appropriate conditions; and
4. Respondents be enjoined from re-detaining Petitioner pursuant to 8 C.F.R. § 241.13(i)(2) unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 5, 2026**

STANLEY A. BOONE
United States Magistrate Judge